UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | |
|---|---|
| United States of America, | |
| Plaintiff, | Case No. 3:18-cr-032 (1) |
| v. | Judge Thomas M. Rose |
| Sterling H. Roberts, | |
| Defendant. | |

**ENTRY AND ORDER DENYING MOTION TO SUPPRESS ORAL STATEMENTS. DOC. 312.**

This matter comes before the Court pursuant to Defendant's motion to suppress statements made following his arrest in Spartanburg, South Carolina on August 17, 2017. Doc. 312. Because Defendant made a valid waiver of his *Miranda* rights, the statements are admissible at trial.

**Background**

On August 15, 2017, following the murder of Robert Caldwell in Riverside, Ohio, Sterling Roberts drove from Ohio to South Carolina. Three days later, on August 18, 2017, at approximately 11:10 p.m., Roberts drove into a gas station in Spartanburg, South Carolina, exited his vehicle, and fired shots at a sheriff's deputy in the gas station parking lot. (Doc. 351, Transcript of September 3, 2021 hearing, PageID 2388-2421). Officers with the Spartanburg County Sheriff's Office responded to the scene and took Roberts into custody. (Id. at PageID 2389).

Violent Crimes Unit Sergeant Joseph Guffey was dispatched to the scene. (Id. at PageID 2386-88.) Upon his arrival, Sgt. Guffey spoke with officers to learn about the shooting. (Id. at

PageID 2389-90). Sgt. Guffey then checked on Roberts who was seated in the back of a patrol car. (Id. at PageID 2390-91). Sgt. Guffey noticed that Roberts was sweaty, which was not unusual given that August was a muggy time of year in South Carolina, and everyone was "pretty sweaty out there." (Id. at PageID 2391).

According to his report, Sgt. Guffey also documented that Roberts' eyes were "wide-open" but believed that this could be attributed to Roberts' involvement and reaction to the recent shooting at the deputy. (Id. at PageID 2393). Sgt. Guffey also asked if Roberts needed medical attention, which he declined. (Id. at PageID 2390-91). Sgt. Guffey's interactions with Roberts convinced him that Roberts had no difficulty or issues in communicating. (Id. at PageID 2394).

Eventually Sgt. Guffey left the scene and returned to the sheriff's office, where Roberts had been brought, to conduct an interview. (Id. at PageID 2395-96). Roberts was placed in an interview room, which had a recording system to capture the interview with Roberts. (Id. at PageID 2396-2400, Government's Exhibits 1 and 1A). After entering the interview room and ensuring Roberts did not need anything, Sgt. Guffey began the interview by explaining to Roberts the pre-interrogation waiver, which contained a *Miranda* rights waiver. (Id. at PageID 2400).

Sgt. Guffey, retired at the time of the suppression hearing on September 28, 2021, had been in law enforcement since 2001 until he retired in November 2019. (Id. at PageID 2384-85). He spent approximately nine years with the Duncan Police Department and was at the Spartanburg Sheriff's Office from then until his retirement in 2019. (Id. at PageID 2385). Sgt. Guffey worked in the Violent Crimes Unit beginning in 2014 and became sergeant over the unit. (Id.). In his approximately nineteen years with law enforcement, Sgt. Guffey had interviewed hundreds of people giving him numerous opportunities to observe people during interviews. (Id.

at PageID 2399-2400). During those interviews, Sgt. Guffey ensured that responses to questions are normal and lucid to ensure that the interviewee can understand him. (Id. at PageID 2402).

Sgt. Guffey noted no injuries to Roberts' person at any time while Roberts had been seated in the back of the cruiser or while they were together in the interview room. (Id. at PageID 2401). The interview occurred approximately 90 minutes after the gas station shooting incident. (Id. at PageID 2421). While it was from 11:00 pm to midnight, Roberts did not appear sleepy to Guffey, nor was he nodding off during the interview. (Id. at PageID 2401). Roberts was no longer excessively sweaty while seated in the interview room. (Id.). Sgt. Guffey noted no odor of alcohol. (Id.). Sgt. Guffey did not observe glassy eyes, slurring of speech, stumbling over words, or other indications that Roberts was under the influence of alcohol, medication, or controlled substances. (Id. at PageID 2403, 2418). According to Guffey, Roberts was able to answer questions appropriately. (Id. at PageID 2403, 2418). In short, Guffey believed there was nothing about his interview with Roberts that caused him concern regarding whether Roberts understood what was occurring during the interview. (Id. at PageID 2404).

Sgt. Guffey went over the pre-interrogation waiver form with Roberts and filled in the information Roberts provided. (Id. at PageID 2405-2407, Gov't Exhibit 2). Roberts told Guffey he finished high school. (Id. at PageID 2409). Guffey read the form line-by-line to Roberts to ensure his understanding. (Id. at PageID 2407). As Guffey explained each right, he asked Roberts to state what he understood that to mean. (Id. at PageID 2416). After going over the form line-by-line, Roberts signed the waiver. (Id. at PageID 2408-10, 2416). During the interview Roberts confided that he was a suspect in a homicide. (Id. at PageID 2417-18).

By August 15, 2017, Sterling Roberts already had substantial experience with the criminal justice system. (Id. at PageID 2461). Roberts was on probation at the time and had an outstanding probation violation. (Id. at PageID 2460). Roberts also had multiple felony

3

convictions including a 2011 conviction for deception to obtain, a 2011 conviction for forgery and engaging in a pattern of corrupt activity, another conviction for forgery, as well as a 2006 conviction for burglary. (Id. at PageID 2461). Roberts also had misdemeanor convictions. (Id.)

On March 13, 2018, Sterling H. Roberts was indicted with five other individuals in Case 3:18-cr-032 on charges relating to the death of Robert Caldwell. (Doc. 20, Indictment). He seeks to suppress his in-custody statements to Sgt. Guffey.

**Analysis**

Roberts contests the validity of the waiver of his *Miranda* rights, asserting drug use invalidated the voluntariness of his waiver. In order for a defendant's in-custody statement in response to police questioning to be admissible under the Fifth Amendment, the defendant must "voluntarily, knowingly and intelligently" waive his *Miranda* rights. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966); see *Colorado v. Connelly*, 479 U.S. 157, 169 (1986). Although not dispositive, a written waiver of one's *Miranda* rights is "strong" evidence that the waiver is valid. *North Carolina v. Butler*, 441 U.S. 369, 373 (1979); *United States v. Skinner*, 667 F.2d 1306, 1309 (9th Cir. 1982).

Whether a defendant has waived his *Miranda* rights involves a two-pronged inquiry. *Moran v. Burbine*, 475 U.S. 412, 421 (1986). The first prong involves the voluntariness of the confession. Id.; see *United States v. Montgomery*, 621 F.3d 568, 573 (6th Cir. 2010). Under the three-factor test established by the Sixth Circuit, a confession is involuntary if (1) it was "'extorted ... from the accused by means of coercive activity'"; (2) the coercive activity was "sufficient to overbear the will of the accused"; and (3) the accused's will "was overborne *because* of the coercive police activity in question." *McCall v. Dutton*, 863 F.2d 454, 459 (6th Cir. 1988) (emphasis in original) (quoting *United States v. Rohrbach*, 813 F.2d 142, 144 (8th Cir. 1987)). Whether this test is satisfied depends on the "totality of the circumstances," which

4

includes, among other relevant factors, coercive police activity; the length, location, and continuity of the defendant's interrogation; the defendant's maturity, education, and physical and mental condition; and whether the defendant was advised of his *Miranda* rights. *Abela v. Martin*, 380 F.3d 915, 928 (6th Cir. 2004). Although the "voluntary" inquiry analyzes multiple factors, it ultimately hinges on the existence of coercive police activity. *Connelly*, 479 U.S. at 167.

Coercive activity "is a necessary predicate to the finding that a confession is not 'voluntary.'" Id. Instead of giving dispositive weight to "'moral and psychological pressures to confess emanating from sources other than official coercion,'" the "sole concern of the Fifth Amendment, on which *Miranda* was based, is governmental coercion." Id. at 170 (quoting *Oregon v. Elstad*, 470 U.S. 298, 305 (1985)). Therefore, whether a defendant has waived his *Miranda* rights and "voluntarily" confessed cannot rest on his state of mind alone. Id. at 165; see *United States v. Newman*, 889 F.2d 88, 94–95 (6th Cir. 1989); *United States v. Chapman*, 112 Fed. App'x 469, 474 (6th Cir. 2004) (affirming the admission of a confession made while the defendant was in a "heroin-befuddled" mental state because there was no allegation of police coercion).

The second prong of the *Miranda* inquiry focuses on whether the defendant "knowingly and intelligently" relinquished his rights. *Moran*, 475 U.S. at 421. For a waiver to satisfy this prong, the defendant must be fully aware "of both the nature of the right being abandoned and the consequences of the decision to abandon it." Id. Like the "voluntary" prong, this inquiry depends on the "totality of the circumstances surrounding the interrogation," including the defendant's "age, experience, education, background, and intelligence, and ... whether he has the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights." *Fare v. Michael C.*, 442 U.S. 707, 725 (1979).

The defendant does not have to understand "every possible consequence of a waiver of

the Fifth Amendment privilege," but he must know that "he [could] choose not to talk to law enforcement officers, to talk only with counsel present, or to discontinue talking at any time." *Garner v. Mitchell*, 557 F.3d 257, 261 (6th Cir. 2009) (alteration in original) (quoting *Colorado v. Spring*, 479 U.S. 564, 574 (1987)). To be sure, a defendant does not have to expressly waive his *Miranda* rights for his confession to be made "knowingly and intelligently." *Berghuis v. Thompkins*, 560 U.S. 370 (2010). If the "prosecution shows that a *Miranda* warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent." Id. at 2262.

Like the "voluntary" prong, the influence of drugs and alcohol, alone, is not enough to prove that a defendant did not understand his *Miranda* rights or that he waived his rights unknowingly or unintelligently. See *Montgomery*, 621 F.3d at 573–74; *United States v. Dunn*, 269 Fed. App'x 567, 572–73 (6th Cir. 2008) (holding that the influence of Vicodin and marijuana, when defendant was otherwise "alert, coherent, and lucid" during interrogation, failed to render the defendant's waiver unknowing).

Roberts had a high school education and he had substantial experience with the criminal justice system having had multiple prior felony convictions as well as misdemeanor convictions. Roberts was offered medical treatment but denied needing any. He was provided water and never asked for anything else such as a break or food. When asked to provide his understanding of his rights, Roberts provided logical explanations of each of his rights. His demeanor and responses were calm. Furthermore, Sgt. Guffey's demeanor and questions were calm. Based on the totality of the circumstances, the evidence supports a finding that Roberts' waiver was voluntary, knowing, and intelligent.

Roberts does not allege police coercion. Instead, he contends that he was incapable of waiving his *Miranda* rights because he was under the influence of drugs. However, a defendant's

6

reliance on mental condition alone cannot render his confession involuntary. *Connelly*, 479 U.S. at 164; see *Newman*, 889 F.2d at 94. Since Roberts has failed to demonstrate, or even allege, any police coercion, his confession cannot be considered involuntary. See *Abela*, 380 F.3d at 928.

Despite the precedent requiring a defendant to allege coercive police activity, the Sixth Circuit has been willing to consider whether extreme intoxication renders a confession involuntary. See *Montgomery*, 621 F.3d at 572–75 (comparing the standards of consent-to-search under the Fourth Amendment and *Miranda* waivers under the Fifth Amendment and noting that "in some settings, the influence of drugs ... or alcohol may tip the balance in favor of finding a lack of [mental] capacity."). However, the Sixth Circuit has suggested that a defendant must be at or near total incapacitation to use intoxication as proof that his confession was involuntary. See id.

Roberts' demeanor during the interrogation, including his body language, clear communication and repeated eye contact, does not indicate that he reached a level of extreme intoxication at which his confession could be considered involuntary. See, e.g., *United States v. Treadwell*, 11 Fed. App'x 502, 510 (6th Cir. 2001) (finding that ingestion of more than five times the prescribed dose of Trazodone prior to interrogation did not make defendant's confession involuntary); *Marcum v. Knight*, 922 F.2d 841 (6th Cir. 1991) (concluding that defendant's blood alcohol level of 0.25 was insufficient to render confession involuntary).

Roberts also fails to satisfy the second prong of the *Miranda* inquiry. During the interrogation, Roberts appeared alert and communicated clearly with the officer. *Cf., Dunn*, 269 Fed. App'x at 573. While being read his *Miranda* rights, Roberts indicated that he understood that any statement he made could be used against him and that he had a right to consult with counsel prior to making any statement. Roberts' behavior supports a finding that his waiver was voluntary.

7

Roberts asserts that he displayed signs of impairment, was paranoid and delusional, described events not depicted on video, and provided answers that were difficult to understand. (Doc. 361 at PageID 2605). However, based on the testimony of Det. Guffey as well as the recorded interview itself (Gov't Exhibit 1), Roberts was not displaying any signs that would indicate his waiver was less than voluntary, knowing, and intelligent. He therefore comprehended the warnings read to him and the consequences of waiving his rights. While other officers mentioned concerns of intoxication to Sgt. Guffey (Doc. 351, Transcript of September 3, 2021 hearing at PageID 2429-31), these officers only had a brief interaction with Roberts. Prior to waiving his *Miranda* rights and making his statement, Roberts denied needing medical assistance and did not complain to the arresting officers of any physical or mental impairment. Sgt. Guffey did not have any concerns that Roberts was unable to understand what was occurring during the interview. Even assuming that Roberts was under the influence of drugs and alcohol, such intoxication still does not render his confession unknowing under the "totality of the circumstances" approach. See *Montgomery*, 621 F.3d at 573–74; *Dunn*, 269 Fed. App'x at 572. *United States v. Thompson*, No. 13-20077, 2013 WL 3212529, at *2–4 (E.D. Mich. June 26, 2013).

The totality of the circumstances, including the background, experience, and conduct of Roberts demonstrate that his *Miranda* waiver and his initial post-arrest statements were voluntary, knowing, and intelligent.

**Conclusion**

Because Roberts voluntarily, knowingly, and intelligently waived his *Miranda* rights and volunteered a coherent statement to Sgt. Guffey, Motion to Suppress Oral Statements, Doc. 312, is **DENIED**.

**DONE** and **ORDERED** in Dayton, Ohio on Tuesday, January 11, 2022.

s/Thomas M. Rose
_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE