**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA**, | : | |
| | : | |
| Plaintiff, | : | Case No. 3:18-cr-32(1) |
| | : | |
| v. | : | Judge Thomas M. Rose |
| | : | |
| **STERLING H. ROBERTS**, | : | |
| | : | |
| Defendant. | : | |

**ENTRY AND ORDER DENYING DEFENDANT STERLING H. ROBERTS' MOTION TO SUPPRESS PRETRIAL IDENTIFICATION (DOC. NO. 311)**

Pending before the Court is Defendant Sterling H. Roberts' Motion to Suppress Pretrial Identification (Doc. No. 311) (the "Motion"). In the Motion, Defendant Sterling H. Roberts ("Roberts") seeks to exclude the pretrial identification made by an eyewitness via a photospread prepared by the police. (Doc. No. 311 at PageID 1679.) Roberts argues that the pretrial identification was unduly suggestive and, consequently, denied him due process of law. (*Id*.) For the reasons explained below, the Court **DENIES** the Motion.

I.     **BACKGROUND**

On August 15, 2017, Robert Caldwell ("Caldwell") was killed outside of the Cornerstone Building in Riverside, Ohio. (Doc. No. 367 at PageID 2624.) The United States of America (the "Government") alleges that Defendant Sterling Roberts ("Roberts") waited outside the building, hidden behind a mailbox. (*Id*.) Upon Caldwell's exit from the building, the Government alleges Roberts fired multiple shots at Caldwell from behind and fired several more shots into Caldwell while standing over his body. (*Id*.)

Law enforcement obtained a surveillance video from a neighboring building and, from

1

there, were able to isolate a still image of the suspect. (Doc. No. 351 at PageID 2439-40.) The image was subsequently released to the press, along with a description of the person wanted in connection with the homicide. (*Id*. at PageID 2440.) A witness, identified as A.J.T., spoke to law enforcement at the scene and spoke to Detective Travis Abney ("Abney") the day after the homicide. (*Id*. at PageID 2442-43.) A.J.T. told Abney that she saw a "suspicious person . . . crouched near a mailbox at the front of the building where th[e] incident occurred." (*Id*. at PageID 2443.) A.J.T. also informed Abney that she was confident the individual in the still image released to the media was the person she had seen. (*Id*.) A.J.T. agreed to come to the police station and look at a photo lineup. (*Id*. at PageID 2444.)

Abney used a website, JusticeWeb.org, to create a photo array using Roberts' mugshot as the initial image. (*Id*. at PageID 2446.) Abney selected five additional mugshots of individuals who had similar characteristics to Roberts, including similar height, weight, and hair color. (*Id*. at PageID 2446-47.) Abney took steps to ensure the photos had similar lighting and backgrounds, and he also made sure the photos did not include anyone in jail clothing or who was obviously incarcerated. (*Id*. at PageID 2474-75.) The website created a photo array with six photos and created a packet of information to use during the photo identification. (*Id*. at PageID 2447.) Abney, as a matter of unofficial practice, does not place the suspect's photo in the first or sixth spot in order to avoid having the suspect stand out as the first or last person the witness sees. (*Id*. at PageID 2476.)

Police Officer Ron Reardon ("Reardon") was brought in by Abney to serve as a blind administrator. (*Id*. at PageID 2449.) A blind administrator[1] is an individual who is not involved in the investigation and is not aware of who the suspect is. (*Id*.) Reardon was selected because he

---

[1] A blind administrator is the individual who meets with and presents the witness the photo lineup.

2

had only recently returned from injury leave and Abney believed he knew little about the suspect. (*Id*.)

A.J.T. arrived at the police station, with her father, on August 16, 2017. (*Id*. at PageID 2495.) Reardon took the witness and her father to an interview room. (*Id*. at PageID 2458-59.) Reardon was given a photo identification packet, which he filled out. (*Id*. at PageID 2490.) Reardon then read an instruction to the witness:

> I am going to show you a group of photographs. This group of photographs may or may not contain a picture of the person who committed the crime now being investigated. I do not know who the suspect is. Keep in mind that hair styles, beards, and moustaches may easily be changed. Also, photographs may not always depict the true complexion of a person; it may be lighter or darker than shown in the photo. Pay no attention to any markings or numbers that may appear on the photos or any differences in the type or style of the photographs. When you have looked at all of the photos, tell me whether or not you see the person who committed the crime or any other person you recognize. Do not tell other witnesses that you have or have not identified anyone.

(*Id*. at PageID 2490; Ex. 4.)

Reardon provided a copy of these instruction to A.J.T. so she could follow along as he read them. (Doc. No. 351 at PageID 2491.) After reading the instructions, Reardon typically moves to the doorway of the interview room so that he is available to the witness, but not hovering over them. (*Id*. at PageID 2503.) Reardon did not pressure A.J.T. to make a selection or indicate to her who the suspect was. (*Id*. at PageID 2494-95.) Nor did A.J.T.'s father, who remained in the room with her, pressure her to make a selection. (*Id*. at Pageid 2495.)

A.J.T. identified Roberts' mugshot as the person she saw outside the Cornerstone Building in Riverside and indicated she was 50% certain of her identification. (*Id*. at PageID 2492-94; Exs. 4 and 12.) Both A.J.T. and Reardon recorded the identification, which took approximately nine minutes, and Reardon returned the packet to Abney. (Doc. No. 351 at PageID 2492-96; Exs. 4 and 12.)

On May 24, 2021, Roberts filed a motion to suppress the identification and requesting a hearing. (Doc. No. 311.) A hearing was held on September 7, 2021. On October 25, 2021, Roberts filed his brief in support of the Motion. (Doc. No. 362.) The Government filed its response on November 22, 2021. (Doc. No. 367.) Roberts did not file a reply, and the time has passed for him to do so. This matter is briefed and ripe for review.

II. **ANALYSIS**

   a. **Legal Standard**

Under the principles of due process, a pretrial identification by photographic lineup is inadmissible "if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384, 88 S. Ct. 967, 19 L. Ed. 2d 1247 (1968). "The due process concern is heightened when that misidentification is possible because the witness is called upon to identify a stranger whom she has observed only briefly, under poor conditions, and at a time of extreme emotional stress and excitement." *Ledbetter v. Edwards*, 35 F.3d 1062, 1070 (6th Cir. 1994). The guiding rationale behind this prohibition is to deter malfeasance by the investigating officers, as opposed to ensuring the reliability of the actual identification. *Perry v. New Hampshire*, 132 S. Ct. 716, 726, 181 L. Ed. 2d 694 (2012); *United States v. Watson*, 540 F. App'x 512, 515 (6th Cir. 2016). Therefore, an identification will not be suppressed unless there is improper behavior by the investigating officers giving rise to the impermissible suggestiveness. *Perry*, 132 S. Ct. at 721; *Watson*, 540 F. App'x at 515.

Suppression of a pretrial identification is warranted if, "(1) the identification procedure was unduly suggestive, and (2) the identification was not otherwise reliable under the totality of the circumstances." *Watson*, 540 F. App'x at 515 (citing *Ledbetter*, 35 F.3d at 1070)). Suggestiveness

4

alone does not give rise to a constitutional violation. *Howard v. Bouchard*, 405 F.3d 459, 470 (6th Cir. 2005). Rather, it is unnecessary suggestiveness that creates a substantial likelihood of misidentification. *Neil v. Biggers*, 409 U.S. 188, 198, 93 S. Ct. 375, 34 L. Ed. 2d 401 (1972).

The burden rests on the defendant "to demonstrate that the pretrial identification procedure was impermissibly suggestive." *United States v. Beverly*, 369 F.3d 516, 538 (6th Cir. 2004) (citing *United States v. Hill*, 967 F.2d 226, 230 (6th Cir. 1992)). If the defendant meets this burden, then the court "must determine, in light of all of the circumstances, whether the unfair suggestiveness was conducive to a 'very substantial likelihood of irreparable misidentification.'" *Beverly*, 369 F.3d at 538 (quoting *Simmons*, 390 U.S. at 384). If the defendant fails to show the identification process was unduly suggestive, then the Court's analysis ends at step one. *Watson*, 540 F. App'x at 515.

### b. The Identification Procedure

The first step requires the Court to determine whether "the identification procedure was unduly suggestive." *United States v. Gibson*, No. 3:12-CR-72, 2013 U.S. Dist. LEXIS 136692, at *9, 2013 WL 5366133 (S.D. Ohio Sept. 24, 2013). The Court must determine whether the procedure employed "steered the witness to one suspect or another, independent of the witness's honest recollection." *Cornwell v. Bradshaw*, 559 F.3d 398, 413 (6th Cir. 2009) (citing *Wilson v. Mitchell*, 250 F.3d 388, 397 (6th Cir.2001)). The determination is fact-specific and the Court may consider a number of factors, including, "the size of the [photographic] array, the manner of its presentation by the officers, and the details of the photographs themselves." *United States v. McComb*, 249 F. App'x 429, 437 (6th Cir. 2007) (quoting *United States v. Sanchez*, 24 F.3d 1259, 1262 (10th Cir. 1994)).

The Supreme Court of the United States set out a number of examples of unduly suggestive

procedures, such as:

> that all in the lineup but the suspect were known to the identifying witness, that the other participants in a lineup were grossly dissimilar in appearance to the suspect, that only the suspect was required to wear distinctive clothing which the culprit allegedly wore, that the witness is told by the police that they have caught the culprit after which the defendant is brought before the witness alone or is viewed in jail, that the suspect is pointed out before or during a lineup, and that the participants in the lineup are asked to try on an article of clothing which fits only the suspect.

*United States v. Wade*, 388 U.S. 218, 232-33, 87 S. Ct. 1926, 18 L. Ed. 2d 1149 (1967).

Roberts first argues that the photo lineup was unduly suggestive solely because it violated Ohio Rev. Code § 2933.83. (Doc. No. 362 at PageID 2612-13.) The failure to follow the procedures set forth in Ohio Rev. Code § 2933.83 does not warrant suppression nor does it warrant a finding that the lineup procedures used were unduly suggestive. *Gibson*, 2013 U.S. Dist. LEXIS 136692, at *9; *Dewberry v. Warden, Leb. Corr. Inst.*, No. 3:21-cv-158, 2021 U.S. Dist. LEXIS 246362, *39, 2021 WL 6125046 (S.D. Ohio Dec. 28, 2021). Simply put, a violation of Ohio Rev. Code § 2933.83 does not compel a determination that the defendant's due process rights were violated. *See United States v. Dixon*, No. 3:15-cr-81, 2016 U.S. Dist. LEXIS 163499, *20, 2016 WL 6956665 (S.D. Ohio Nov. 28, 2016.) Therefore, the decision not to follow the procedures set forth in Ohio Rev. Code § 2933.83 was not unduly suggestive.

Roberts next argues that the Riverside Police Department's policy of not placing the suspect's picture in the first or sixth spot increases the potential for the lineup to be unduly suggestive. (Doc. No. 362 at PageID 2613.) No evidence was presented at the hearing or in the briefing that Reardon knew who the suspect was in this case. Nor was there any evidence that Reardon did anything to indicate to the witness that the suspect's photo would be located somewhere between the second and fifth spots. There is no indication that limiting the placement of Roberts' photo to one of four spots "steered the witness to one suspect or another, independent

6

of the witness's honest recollection." *See Cornwell*, 559 F.3d at 413. In this instance, Abney appears to have taken care to include photos in the lineup that all had similar lighting and backgrounds, that no one appeared in prison clothing, and that all the individuals looked similar. (Doc. No. 351 at PageID 2474-75.) Therefore, the placement of the photo was not unduly suggestive.

Finally, Roberts argues that the press release and media coverage eliminated the possibility of a double-blind administration of the photo lineup. (Doc. No. 362 at PageID 2613-14.) There is no indication in the record that Reardon saw the press release from the Riverside Police Department or the media coverage of this case. As Reardon testified, he lives in Cincinnati and does not consume any Dayton media. (Doc. No. 351 at PageID 2486-87, 2496). Moreover, non-blind identifications are not inherently suggestive. *Watson*, 540 F. App'x at 515; *United States v. Starnes*, 552 F. App'x 520, 525 n.1 (6th Cir. 2014); *United States v. Coleman*, 851 F. App'x 1016, 1021 (11th Cir. 2021); *United States v. Moulton*, No. 1:10-CR-120, 2011 U.S. Dist. LEXIS 26769, *28-29, 2011 WL 902639 (N.D. Ga. Mar. 14, 2011). Furthermore, multiple courts have held that non-double-blind identifications are not unduly suggestive. *United States v. Caldwell*, 265 F. App'x 638, 639 (9th Cir. 2008); *United States v. Henderson*, No. 1:11-CR-255, 2012 U.S. Dist. LEXIS 66037, *12-3 n.11, 2012 WL 1665870 (N.D. Ga. Apr. 16, 2012); *United States v. Steele*, No. 1:14-CR-147, 2015 U.S. Dist. LEXIS 114588, at *15 (N.D. Ga. May 1, 2015).

Indeed, there is nothing in the record to indicate that Reardon knew who the suspect was or that he did anything to steer or pressure A.J.T. into a decision. Similarly, there is no indication that the press coverage or media release had any effect on the witness' identification. Nor is it explained how the press coverage and media release would have rendered this identification unduly suggestive. Roberts has not satisfied his burden to demonstrate that there was undue

7

suggestion in this identification.

The Court finds that the pretrial identification was not unduly suggestive. Therefore, the Court need not proceed to the second step and evaluate the reliability of the identification. *Watson*, 540 F. App'x at 515.

### III. CONCLUSION

For the reasons stated above, the Court **DENIES** Defendant Sterling Roberts' Motion to Suppress Pretrial Identification (Doc. No. 311).

**DONE** and **ORDERED** in Dayton, Ohio, this Wednesday, January 12, 2022.

s/Thomas M. Rose

THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE
