UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

United States of America,

                        Plaintiff,                                  Case No. 3:18-cr-032 (1)

v.                                                         Judge Thomas M. Rose

Sterling H. Roberts,

                        Defendant.

---

**ENTRY AND ORDER DENYING MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF AN AUGUST 5, 2017 911 CALL FROM JAMESTOWN, OHIO. DOC. 315.**

---

This matter comes before the Court pursuant to Defendant Sterling H. Roberts's motion to exclude evidence of an August 5, 2017 911 call by Robert Caldwell, who is deceased. Doc. 315. Because the present sense impression and excited utterance exceptions apply, Defendant's motion will be denied.

**Background**

Robert Caldwell was married to Sterling Roberts' co-defendant, Tawnney Caldwell, from approximately 2009 to 2012. Following their divorce, Tawnney was awarded primary custody of their three minor children, and Caldwell was awarded visitation rights.   In 2013, Tawnney began a romantic relationship with Sterling Roberts, with whom she had two additional children.

From 2013 to August 2017, Tawnney and Robert Caldwell engaged in a custody dispute stemming from Tawnney's frequent interference with Caldwell's visitation rights. The dispute was litigated in Montgomery County, Ohio Court of Common Pleas, Domestic Relations Division. *See Caldwell v. Caldwell*, 2011 DR 01381. In 2017, Caldwell filed a motion for

temporary custody of the three children on the basis that Tawnney was then residing with Roberts, who was facing a felony weapons charge, had a history of substance abuse and had mental health issues. On May 2, 2017, the court ordered that Tawnney not allow Roberts to be in the presence of the minor children or to have any contact with the Caldwell's minor children.

On May 10, 2017, Robert Caldwell moved for a reallocation of parental rights. On July 19, 2017, the court found that a modification of custody was necessary to serve the best interests of the children. It ordered that Caldwell be designated the custodian and residential parent and that Tawnney have parenting time according to the court's standard order. The court also repeated its prior order barring Sterling Roberts from having any contact with or being in the vicinity of the Caldwells' minor children. Finally, the court discontinued Robert Caldwell's child support obligation and ordered Tawnney to begin paying child support.

On August 5, 2017, Roberts, with Tawnney's assistance, sent a series of text messages luring Caldwell to an abandoned farmhouse in Jamestown, Ohio. Roberts pretended to be "Debbie Brown" wanting to hire Caldwell. When Caldwell arrived near the farmhouse, Roberts attempted an ambush, brandished a firearm, and stated "what's up Bobby, you ready to die." (witness statement, Ex. B at 2.) Caldwell recognized Roberts, fled, and called 911. (*Id.* at 3.)

Caldwell's phone call with the 911 operator lasted two minutes and fifty-four seconds. (*See* 911 call, Ex. A.) On the call, Caldwell reports that he is currently being chased by a man who had just attempted to lure him out to Jamestown and that he assumes the man is trying to kill him. Caldwell states that he is driving on Sutton Road, that the man was right behind him in the car, and that he is afraid the man will pull a gun on him. At around the 1:00 minute mark, Caldwell reports that the man has stopped following him and is driving away at a high speed. Caldwell gives the operator a description of a car—a drop top Mitsubishi Eclipse with 30-day

tags—and warns that the man is likely "armed and dangerous." In response to the operator's questions, Caldwell then identifies the man who was chasing him as "Sterling Roberts—he is my ex-wife's boyfriend and they just lost full custody of all our kids."

The operator then tells Caldwell that law enforcement officers will meet with Caldwell and get ahold of Roberts later. The operator asks where the police can meet Caldwell, to which he responds that he does not know where he is. Caldwell apologizes because he is "a little shooken up." After several attempts, he is able to give his location to the operator, who provides him instructions about where he can meet the Jamestown police. Before hanging up, Caldwell states, "I am going to call my wife and have her get my kids out of my house in Beavercreek."

While Caldwell was en route to the police station, Roberts texted him "You['re] a bitch bob," from the "Debbie Brown" phone number. (*See* affidavit, Ex. C at 5.) At the police station, Caldwell gave a three-page handwritten witness statement that identified Roberts by name and documented Roberts' actions. (*See* witness statement, Ex. B.)

Two days later, on August 7, 2017, Caldwell signed a sworn affidavit that recounted Roberts' attempt to lure him to the abandoned farmhouse. (*See* affidavit, Ex. C.) The affidavit noted that the Greene County Sheriff's department was investigating the matter and that Caldwell was cooperating with the investigation. Caldwell's affidavit was included in an August 8, 2017 *ex parte* motion filed in the Montgomery County custody case. (*See ex parte* motion, Doc. 354-3, Exhibit D.) That motion requested an immediate suspension of Tawnney's parenting time based on Roberts' actions on August 5 and Roberts' violation of the no contact order on August 4, when he pretended to be Tawnney's brother to induce a social worker to leave one of the minor children in his care. (*Id.* at 1–5.) The motion requested a hearing (*see id.* at 1), at which Caldwell's attorney anticipated Caldwell would testify. The motion was granted the same day, and Tawnney was served with the *ex parte* motion and order, including Caldwell's affidavit, on August 9, 2017.

(*See* PageID 354-4.)

On August 8, 2017, Caldwell also filed a petition for a civil stalking protection order against Roberts in the Greene County Court of Common Pleas based on Roberts' attempt to lure him to the abandoned farmhouse. (*See* PageID 354-5.) The court issued a protection order that day and set a hearing for August 21, 2017. (*Id.* at 7–10.) The Montgomery County Sheriff's Office was unable to serve Sterling Roberts with the order, however, as he went to Tennessee after the August 5 incident. (*See id.* at 12.)

On August 14, 2017, Roberts and Tawnney Caldwell traveled from Tennessee to Tawnney's parents' home in Kentucky, before proceeding on to Dayton, Ohio. On August 15, 2017, Roberts waited for Caldwell outside of the Cornerstone Building in Riverside, Ohio where Caldwell and his minor children were attending a family counseling session. As Caldwell exited the building with his sons, Roberts is alleged to have emerged from a hiding spot behind a mailbox and to have fired multiple shots at Caldwell from behind. After Caldwell fell to the ground, Roberts allegedly stood over Caldwell and continued to fire shots into his body. Roberts allegedly fled the scene, and Caldwell was pronounced dead at approximately 6:11 p.m.

**Analysis**

Federal Rule of Evidence 803 sets forth several exceptions to the general prohibition that a declarant's out-of-court statement that is offered to prove the truth of the matter asserted is inadmissible hearsay. Fed. R. Evid. 803; *see also id.* 801, 802. Among the exceptions are present sense impressions and excited utterances, which apply regardless of whether the declarant is available as a witness. *Id.* 803(1), (2).

Present sense impressions are statements "describing or explaining an event or condition, made while or immediately after the declarant perceived it." Fed R. Evid. 803(1). The Sixth Circuit has held that 911 calls made within minutes of the event described in the call are

4

sufficiently cotemporaneous to qualify as both excited utterances and present sense impressions. *United States v. Price*, 58 F. App'x 105 (6th Cir. 2003); *see also United States v. Davis*, 577 F.3d 660, 668 (6th Cir. 2009) (statement admissible as a present sense impression and excited utterance where the witness "testified that she made the 911 call within thirty seconds to a minute after seeing Defendant"); *Arnold*, 486 F.3d at 185 (911 call admissible as excited utterance); *United States v. Johnson*, 509 F. App'x 487, 494 (6th Cir. 2012) (911 call, "made immediately after witnessing the described event," met the definition of a present sense impression under Rule 803(1) (internal quotation marks and alteration omitted)).

Pursuant to the excited utterance exception, "a court may admit out-of-court statements for the truth of the matter asserted when they relate to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." *United States v. Arnold*, 486 F.3d 177, 184 (6th Cir. 2007) (internal quotations omitted). To satisfy the exception, a party must show three things: (1) "there must be an event startling enough to cause nervous excitement;" (2) "the statement must be made before there is time to contrive or misrepresent;" and (3) "the statement must be made while the person is under the stress of the excitement caused by the event." *Haggins v. Warden, Fort Pillow State Farm*, 715 F.2d 1050, 1057 (6th Cir. 1983). The admissibility of the statements ultimately depends on "whether the statement was the result of reflective thought or whether it was a spontaneous reaction to the exciting event." *Arnold*, 486 F.3d at 184 (quoting *Haggins*, 715 F.2d at 1057). Statements made several hours after the underlying event may qualify as excited utterances if the declarant was still under the stress of the excitement at the time of the statement. *See id.* at 185 (collecting cases).

The 911 call here, made immediately after Roberts' failed attempt to lure Caldwell to the farmhouse and murder him, qualifies as both a present sense impression and an excited utterance.

The underlying event, in which Roberts brandished a gun and attempted to ambush Caldwell was "an event startling enough to cause nervous excitement." *See Haggins*, 715 F.2d at 1057; Fed. R. Evid. 803(2); *cf. Arnold*, 486 F.3d at 184 (noting that "being threatened by a convicted murderer wielding a semi-automatic handgun amounts to a startling event that would prompt at least nervous excitement in the average individual").

The evidence establishes that Caldwell was, in fact, under the stress of the excitement caused by the event throughout the call. Caldwell tells the 911 operator that he is "shooken up," and apologizes for not being able to determine his location. (911 call, Ex. A at 02:30–02:35.) *Cf. Arnold*, 486 F.3d at 184 (declarant was in state of excitement where operator had to tell her to calm down). Caldwell's stress is also evidenced by both his fear that Roberts would pull a gun on him (*see* 911 call, Ex. A at 00:50– 00:53) and his desire to have his wife and children evacuate their house out of concern that Roberts might ambush them there (*see id.* at 02:45– 02:50). The stress of excitement, in fact, lasted for several days as Caldwell slept on the couch for several nights out of fear that Roberts might attack him and his family during the night. And while defendant contends that Caldwell "did not sound stressed or excited" on the call (Doc. 315, mot., at PageID 1698), individuals familiar with Caldwell's normal speech patterns told law enforcement that Caldwell sounds nervous and stressed on the call.

The call was also sufficiently close in time to the underlying event to qualify as an excited utterance and present sense impression. Both the phone call itself and Caldwell's written statement to the police completed later that afternoon establish that Caldwell called as he was fleeing from Roberts immediately after the attempted ambush. (See witness statement, Ex. B at 2–3.) On the call, Caldwell tells the operator that Roberts "just tried to lure" him to the farmhouse and describes that Roberts is "right behind him." Cf. *United States v. Hawkins*, 59 F.3d 723, 730 (8th Cir. 1995) (call made minutes after underlying event sufficiently

contemporaneous to qualify as present sense impression where wife stated that husband "just pulled a gun out on me"), judgment vacated on other grounds by *Hawkins v. United States*, 516 U.S. 1168 (1996). Caldwell also explains that he is driving by the intersection of Sutton Road and Burr Road outside of Jamestown, Ohio, which puts him in the immediate vicinity of the farmhouse, located at 2466 Sutton Road, to which Roberts was attempting to lure him. Finally, the phone records confirm that the 911 call was placed within minutes of the encounter at the farmhouse. The 911 call was placed at 12:18 p.m. This is approximately six minutes after Caldwell's last text to "Debbie Brown" asking that she meet him at the mailbox. It is also four minutes before Roberts' last text to Caldwell, made shortly after Caldwell fled the scene, in which Roberts wrote "You['re] a bitch bob." Accordingly, the call itself and the corroborating evidence establish that the call was placed within minutes of the underlying event, which is sufficiently cotemporaneous to qualify as both an excited utterance and a present sense impression. Compare *Price*, 58 F. App'x at 107.

The Government asserts the 911 call is separately admissible under Federal Rule of Evidence 804(b)(6) because Roberts has forfeited by wrongdoing his right to challenge any unconfronted, out-of-court testimonial statements by Caldwell. The Government also advises that Court may need to reach the issue with respect to other out-of-court statements by Caldwell, including his written witness statement to the Greene County Sheriff's Office (PageID 354-1, Ex. B) and his sworn affidavit attached to his *ex parte* petition filed in the Montgomery County domestic relations court (PageID 354-2, Ex. C).

A declarant's out-of-court, unconfronted testimonial statements are ordinarily inadmissible in a criminal prosecution under both the Confrontation Clause and the rule against hearsay. *See Giles v. California*, 554 U.S. 353, 358, 365 (2008); *see also Beckett v. Ford*, 384 F. App'x 435, 447 (6th Cir. 2010). The doctrine of forfeiture by wrongdoing, codified at Federal

Rule of Evidence 804(b)(6), provides an exception where the statement is offered against a party that wrongfully caused the declarant's unavailability. *Beckett*, 384 F App'x at 447. *Giles* confirmed that a criminal defendant forfeits his right to confront a witness's out-of-court statement if the defendant wrongfully caused the witness's unavailability and did so with the intent to prevent the witness from testifying. *Giles*, 554 U.S. at 359–60 (holding that exception applies "only when the defendant engaged in conduct designed to prevent the witness from testifying"); *see also* Fed. R. Evid. 804(b)(6). The intent to prevent testimony need not be the sole motivation for rendering the witness unavailable. Rather, the exception still applies even where the defendant had multiple additional motivations for rendering the witness unavailable. *See United States v. Jackson*, 706 F.3d 264, 267–70 (4th Cir. 2013) (collecting cases).

State supreme courts have held post-*Giles* that the forfeiture-by-wrongdoing exception is not limited to the proceeding in which the defendant was trying to silence the witness, but also permits introduction of the statements in subsequent proceedings, including in subsequent murder cases. *See State v. Miller*, 316 P.3d 1219, 1227 (Ariz. 2013) (allowing admission of witness statements in witnesses' murder case under Arizona's version of Rule 804(b)(6) where defendant had contracted to have witnesses killed to prevent them from testifying in arson case); *State v. McLaughlin*, 265 S.W.3d 257 (Mo. 2008) (en banc) (rejecting defendant's argument that forfeiture-by-wrongdoing exception "cannot apply where the purpose of keeping the witness away was not related to the present case"); *see also United States v. Emery*, 186 F.3d 921 (8th Cir. 1999) (holding pre-*Giles* that witness's statements could be admitted in underlying case and in subsequent murder case where defendant killed federal informant to prevent her from testifying against him regarding his drug trafficking activities). *But cf. United States v. Lentz*, 58 F. App'x 961, 968 (4th Cir. 2003) (Traxler, J. concurring) (interpreting "the Rule 804(b)(6) exception as being generally limited to the introduction of hearsay statements in the proceeding at which the

deceased was expected by the assailant to testify") *with id.* at 969–70 (King, J. concurring in part and dissenting) (stating that the forfeiture-by-wrongdoing exception does "not confine the admissibility of a hearsay statement to the particular proceeding for which the wrongdoer intended to render the declarant unavailable").

The party seeking admission of the unavailable declarant's statements bears the burden of establishing by the preponderance of the evidence that the defendant intentionally caused the declarant's unavailability to keep the declarant from testifying. *Beckett*, 384 F. App'x at 448; *see also Davis v. Washington*, 547 U.S. 813, 833 (2006); *United States v. Ledbetter*, 141 F. Supp. 3d 786, 790–91 (S.D. Ohio 2015) (noting that the preponderance standard still applies where the defendant is on trial for the wrongdoing that triggered the forfeiture exception).

District courts have considerable discretion over the procedures for adjudicating forfeiture-by-wrongdoing claims. *Ledbetter*, 141 F. Supp. 3d at 791. A district court may (1) conduct a separate evidentiary hearing outside the presence of the jury; (2) hold a hearing without the jury present, where the unavailable witness's statements may be considered;" (3) admit the unavailable witness's statements "at trial, after the government has established forfeiture by a preponderance of the evidence without relying on the unavailable witness's statements;" or (4) conditionally admit "the unavailable witness's statements at trial subject to a later showing of their admissibility." *Id.* at 791–92. If a hearing is necessary, the party seeking admission may rely on hearsay evidence, including the unavailable witness's statements, to establish forfeiture. *Id.* at 790 (citing *Davis*, 547 U.S. at 833); *see also* Fed. R. Evid. 104(a).

If the Government wishes to establish a record that the forfeiture exception also applies, the Court will hold a hearing outside the presence of the jury following the testimony of the first two trial witnesses, whom the Government asserts will offer testimony relevant to the issue. *Cf. Ledbetter*, 141 F. Supp. 3d at 793–96 (reviewing benefits and drawbacks of different procedural

options).

**Conclusion**

Because the present sense impression and excited utterance exceptions apply, Defendant

Sterling H. Roberts's motion to exclude evidence of an August 5, 2017 911 call by Robert

Caldwell, who is deceased, Doc. 315, **DENIED**.

**DONE** and **ORDERED** in Dayton, Ohio on Wednesday, January 12, 2022.

s/Thomas M. Rose

_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE

10