# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

UNITED STATES OF AMERICA,

                Plaintiff,        :      Case No. 3:18-cr-032

                                      District Judge Thomas M. Rose

    -   vs   -                         Magistrate Judge Michael R. Merz

STERLING H. ROBERTS,

                Defendant.       :

---

## REPORT AND RECOMMENDATIONS

---

This action, brought *pro se* by Defendant Sterling Roberts under 28 U.S.C. § 2255, is before the Court for decision on the merits. Relevant pleadings are the Motion to Vacate (ECF No. 461), the Government's Response (ECF No. 468) and Defendant's Reply (ECF No. 473. District Judge Rose has referred the Motion to Vacate to the undersigned who provides herein his report on the Motion and recommendation for its disposition.

**Litigation History**

The grand jury for this District indicted Defendant and several others on May 13, 2018, on charges relating to the stalking and killing of Robert Caldwell ("Caldwell")(Indictment, ECF No. 20). A superseding indictment of December 10, 2019, charged Roberts with one count of

1

stalking using a facility of interstate commerce in violation of 18 U.S.C. § 2261A(2) based on his attempted ambush of Caldwell in Jamestown, Ohio, on August 5, 2017; one count of possessing a firearm having been previously convicted of a felony in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2); and one count of interstate stalking in violation of 18 U.S.C. § 2261A(1) that resulted in the death of Caldwell on August 15, 2017. (Superseding Indictment, ECF No. 233). After unsuccessful motion practice, the case proceeded to trial in March, 2022, where the jury convicted Defendant on all counts. (Verdicts, ECF No. 401).

On direct appeal in a published opinion, the Sixth Circuit made the following holdings:

> 1 victim's handwritten statement and affidavit detailing defendant's attempt to ambush him fell within scope of forfeiture-by-wrongdoing exception to Confrontation Clause;
>
> 2 district court did not abuse its discretion in admitting victim's statements to his wife regarding defendant's attempted ambush pursuant to excited utterance exception to hearsay rule;
>
> 3 district court did not abuse its discretion in admitting victim's statements to his attorney pursuant to excited utterance exception;
>
> 4 defendant's communication with attorney was not protected by attorney-client privilege;
>
> 5 as matter of first impression, enhanced video and recordings are admissible if enhancements were properly authenticated and analyst documented his steps when altering source file;
>
> 6 district court did not abuse its discretion by admitting digitally enhanced still images from video footage;
>
> 7 federal statute prohibiting interstate stalking did not exceed Congress's authority under Commerce Clause;
>
> 8 there was sufficient evidence of interstate travel to support defendant's stalking conviction; and

9 defendant's convictions for interstate stalking were not multiplicitous.

*United States v. Roberts*, 84 F.4th 659 (6th Cir.2023). The Sixth Circuit affirmed the convictions and the United States Supreme Court denied certiorari on February 20, 2024 (ECF No. 453). Defendant filed the instant Motion to Vacate February 19, 2025 (ECF No. 461).

In the Motion to Vacate, Defendant pleads the following grounds for relief:

**Ground One:** Ineffective Assistance of Trial Counsel: Failure to Object to Jury Tampering and Prosecutorial Misconduct

**Supporting Facts:** Petitioner[1] asserts that he was denied effective assistance of counsel under the Sixth Amendment. Counsel failed to object to jury tampering by an FBI agent who spoke to two jurors in an elevator and made comments about the Petitioner's guilt. Counsel was notified, but chose not to raise the matter to the court, stating that they did not want a mistrial. This decision prejudiced Petitioner's defense and violated his right to a fair trial.

Counsel also failed to present a plausible defense that pointed to a murder-for-hire plot by co-defendants Tawney Caldwell and Chandra Harmon.

Counsel never called one character witness to testify that Sterling Roberts did not dabble in guns and had no experience with guns.

**Ground Two:** Failure of Counsel to Challenge Witness Misidentification

**Supporting Facts:** During trial several witnesses incorrectly identified Petitioner as the perpetrator. One witness said she was sure he was in her back yard on a day when he was clearly identified as being in Nashville, TN, by the FBI and other witnesses. Trial counsel failed to introduce evidence and testimony concerning

---

[1] Defendant refers to himself throughout as "Petitioner." The Magistrate Judge will not change Defendant's usage in this Report, but will use the correct term - "Defendant" - in his own writing.

Tawney Caldwell's repeated statements that she wanted to hire a hitman.

**Ground Three:** FBI and Prosecutor Misconduct: Further Discovery of Unlawful Contact with Witnesses

**Supporting Facts:** Petitioner asserts that FBI agents engaged in misconduct by improperly influencing witnesses. Several witnesses were provided with monetary compensation. One of these witnesses was the daughter of two law enforcement officers. She was relieved of pending charges against her, was coached and made witness through the FBI coordinating with her parents and was coached to support the government's theory of the case.

Petitioner also asserts that James Harmon's testimony was not effectively countered by trial counsel. James Harmon told the FBI "I'll say anything."

**Ground Four:** Prosecutorial Misconduct: Scripting Answers for Witnesses and Misconduct at Trial

**Supporting Facts:** Petitioner claims that the prosecution engaged in misconduct by using scripted answers amounting to a yes or no response by witnesses. The prosecution was not only leading the witnesses, but constructing their questions as answers. The use of leading questions was used to manipulate testimony and present the case in a way that was prejudicial to Petitioner's defense.

**Ground Five:** Misrepresentation by Appellate Counsel

**Supporting Facts:** Petitioner claims that his appellate counsel was ineffective in failing to properly advocate for his appeal. Specifically, appellate counsel allowed someone else to write the appellate brief, which included a false statement that the Petitioner had admitted to the crime. This is categorically untrue. The petitioner has never ever admitted to doing any harm to Bobby Caldwell on the day of his murder. This false representation was made without the Petitioner's consent or involvement in the writing of the appellate brief. This misrepresentation gravely prejudiced the appeal and violated the Petitioner's right to effective legal

4

representation. Furthermore, as Petitioner's family members attended the appeal proceedings, the attorney wasn't familiar with Petitioner's case at all and was arguing a moot point about an incident where Petitioner wasn't charged with any crime. The appeals attorney was completely unprepared.

Additionally, appellate counsel failed to investigate and raise significant issues that would have affected the outcome of the appeal, including the claims of ineffective assistance of trial counsel and jury misconduct.

**Ground Six:** Breach of Ethical Duty by Former Attorney Lori Withers Cicero in Representing Bobby Caldwell

**Supporting Facts:** Lori Withers Cicero's actions went beyond simply conflict of interest; they represented a severe breach of ethical and fiduciary duties. Cicero had previously represented the Petitioner, Sterling Houston Roberts, in multiple matters, and she had significant knowledge of his family dynamics. Not only had she represented Sterling, but also his brother Christoper Roberts, his wife. Destiny Roberts, and his wife's brother, Chris Goss. Cicero was fully aware that Petitioner and Tawnney were raising Bobby Caldwell's three sons, yet she chose to represent Bobby Caldwell in a legal matter against Tawnney and Petitioner. This was a clear violation of her duty to her former client, Sterling Roberts, and it directly harmed him during his trial.

By representing Caldwell in a case against Tawnney, Cicero violated her ethical obligations and compromised the integrity of the defense in this case. She was well aware of the emotionally and familial conflicts involved, yet she acted in a manner that could only serve to benefit Caldwell, her new client, at the expense of her former client, Sterling Roberts. Her breach of fiduciary duty, failure to disclose the conflict, and subsequent representation of Caldwell against the very family she had once represented is inexcusable, reprehensible. This breach of fiduciary violated the Ohio Bar standards and is illegal and grounds for sanction or disbarment.

(Motion to Vacate, ECF No. 461).

# Analysis

**Governing Standard For Ineffective Assistance Of Counsel Claims**

The Sixth Amendment to the United States Constitution guarantees the right of an accused person to be represented by counsel. If the person is charged with a felony and cannot afford to retain counsel, the government is obliged to provide counsel at the government's expense. *Gideon v. Wainwright*, 372 U.S. 335 (1963).

The right to an appointed attorney encompasses the right to effective representation by that attorney. The governing standard for effective representation at both the trial and appellate levels is set forth in *Strickland v. Washington,* 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687. In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice. *Berghuis v. Thompkins,* 560 U.S. 370, 389 (2010), *citing Knowles v. Mirzayance,* 556 U.S.111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of

6

> hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694. *See also Darden v. Wainwright*, 477 U.S. 168, 184 (1986), *citing Strickland, supra; Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998), *citing Strickland, supra*; *Blackburn v. Foltz*, 828 F.2d 1177, 1180 (6th Cir. 1987), *quoting Strickland,* 466 U.S. at 687.


**Ground One: Ineffective Assistance of Trial Counsel**

In his First Ground for Relief, Defendant Roberts asserts he received ineffective assistance of trial counsel in three different respects which the Court will analyze separately as three sub-claims.


**Sub-claim One: Failure to object to jury tampering**

With respect to sub-claim one, Defendant asserts that at some point during the trial, his mother and two of the seated jurors were on an elevator when FBI agent Kevin Horan entered the elevator and began promoting his own upcoming testimony about cellphones to the two jurors.

7

Relevant facts are provided in the August 24, 2025, Affidavit of Jeanine Roberts filed in support of the Motion to Vacate (Reply, ECF No. 473-1, PageID 6001-03). She describes an incident which occurred March 18, 2022, in one of the four elevators of the Walter H. Rice Federal Building and United States Courthouse where this case was tried. Having had ninth floor offices in that building from November 20, 1984, until March 1, 2023, the undersigned is very familiar with those elevators and can attest that they are open to the general public, witnesses, jurors, and building tenants. Ms. Roberts' description of the physical context is completely credible.

Ms. Roberts also avers she communicated details of the incident to both defense counsel who did not wish to bring the matter to the trial judge's attention because of the risk of a mistrial. The United States has filed the Declaration of Attorney Donald J. Malarcik who represented Roberts from September 2018 through trial in March 2022, along with Attorney James Fleisher who was appointed in June 2018. Attorney Malarcik claims that no one told him or Attorney Fleisher about the elevator incident, but if they had they would have brought it to the Court's attention, had the jurors questioned; if any improper outside influence had been shown, they would have requested a mistrial (Declaration, ECF No. 468-1, PageID 5711-12).

Obviously there is a direct conflict between the testimony of Ms. Roberts and Attorney Malarcik. The Court does not believe it is necessary to resolve that factual conflict because even assuming the truth of Ms. Roberts' account, Defendant has not shown ineffective assistance of trial counsel. The incident is said to have occurred on March 18, 2022, after the case had been in trial for eight days[2]. If jurors confirmed Ms. Roberts' account of the incident in a *Remmer* hearing[3], a mistrial might very well have happened. At this point in time, a mistrial may look like a favorable outcome to Defendant, but the Court must defer to reasonable strategic choices made by

---

[2] Not counting the intervening Saturday and Sunday when the Magistrate Judge assumes the Court did not sit.
[3] *Remmer v. United States*, 347 U.S. 227 (1954).

defense counsel. On March 18, 2022, the case had been in preparation for four years and the trial was within days of completion. Counsel may very well have assessed the sitting jury as more likely to return a not guilty verdict than some unknown future jury. If as Ms. Roberts asserts the defense attorneys were aware of the incident but chose to avoid a mistrial, the Court believes that choice can be attributed to reasonable strategic choice. Mistrial would not have guaranteed acquittal.

Strategic choices by defense counsel are "virtually unchallengeable." *Buell v. Mitchell,* 274 F.3d 337, 359 (6th Cir. 2001), *quoting Meeks v. Bergen*, 749 F.2d 322, 328 (6th Cir. 1984). Even on Ms. Roberts' account, the decision not to bring this matter to the Court's attention was a justifiable strategic choice. Defendant's first ineffective assistance of trial counsel sub-claim is therefore without merit.

**Sub-claim Two: Counsel also failed to present a plausible defense that pointed to a murder-for-hire plot by co-defendants Tawney Caldwell and Chandra Harmon.**

In his second sub-claim of ineffective assistance of trial counsel, Roberts alleges that defense counsel failed to present a "plausible defense" that co-defendants had a plot to hire someone to kill Caldwell.

In response Attorney Milarcik swears:

> As part of the representation of Mr. Roberts at trial, we did raise the defense that co-defendant Tawnney Caldwell hired someone other than Mr. Roberts to commit the murder. We made a strategic decision on how to present that defense in light of the evidence, which included phone tolls, video surveillance, and eye-witness testimony among other things.

9

(ECF No. 468-1, PageID 5712). Roberts make no response to this factual assertion by his counsel. He does not repeat his allegation that this defense was not raised and he does not suggest how the way the defense was presented was not the result of considered strategic choices by his counsel. Roberts' second sub-claim should be dismissed.

**Sub-claim Three: Failure to Call a character witness to show Roberts' lack of familiarity with firearms**

In his Third Sub-claim, Roberts asserts he received ineffective assistance of trial counsel when his attorneys failed to call a character witness to show he was not familiar with firearms.

In his Declaration, Attorney Milarcik states that no character witness was called because

> We made the strategic decision during trial not to call a character witness to testify that Mr. Roberts "did not dabble in guns and had no experience with guns." We were aware of Mr. Roberts's criminal history, which included a prior state conviction for Having Weapons Under Disability (2017) and a federal conviction for Felon in Possession of a Firearm and Ammunition (2019).

(ECF No. 468-1, PageID 5712).

Roberts does not identify any character witness who could have been called to testify as he suggests. Any such character witness would have been very effectively impeached with knowledge of the prior convictions of which his attorneys were aware.

Any defense attorney knows that allowing the jury to hear about a defendant's prior convictions is usually disastrous for the defense. That is the reason most defense attorneys convince or try to convince their clients not to take the witness stand because a defendant can be cross-examined about prior convictions which would otherwise be excluded. If these convictions come in through another witness, defendant does not even get the benefit of telling his own side of the story.

10

Roberts has not shown his counsel provided ineffective assistance of trial counsel by failing to introduce a character witness. Ground One as pleaded in the Motion to Vacate is without merit and should be dismissed on that basis.

**Re-stated Grounds for Relief**

In his Reply, Roberts re-states his grounds for relief as follows:

> **Ground One:** Ineffective Assistance of counsel for failure to object to jury tampering and/or raise issue of jury tampering.
>
> **Ground Two**: Ineffective Assistance of Counsel for failure to challenge witness identification during trial or call Tawney Caldwell to testify.
>
> **Ground Three:** Ineffective Assistance of counsel [for failure to deal appropriately] with third-party private communication by FBI Agent Kevin Horan and jurors prejudiced Defendant *Remmer* hearing by fraud upon the court by jury tampering.

(Reply, ECF No. 473, PageID 5990).

Re-stated Grounds One and Three are dealt with above as sub-claim one of Ground One. Re-stated Ground Two makes two sub-claims, to wit, (1) that it was ineffective assistance of trial counsel to fail to challenge witness identification during trial and (2) to fail to call Tawney Caldwell as a witness. The first of these claims is dealt with under Ground Two as originally pleaded, *infra*.

Failure to call Tawney Caldwell as a witness is not pleaded in the Motion to Vacate. Claims in a motion to vacate cannot be added by inserting them in a Reply. *Jalowiec v. Bradshaw*, 657 F.3d 293 (6th Cir. 2011), *citing Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005). Although a motion to vacate can be amended after it is filed, Roberts has never moved to amend to add this

claim and any such amendment now would be barred by the statute of limitations, since he filed his Motion to Vacate on the last day of the one-year limitations period.

Even if the Motion to Vacate had been amended to include this claim, the Court would find it to be without merit.  As the Magistrate Judge understands Defendant's theory of the case, it is that the victim was killed by someone other than him hired by Tawney Caldwell.  Tawney Caldwell could not be asked questions related to that theory because of her right to remain silent and not incriminate herself under the Fifth Amendment.  To have put her on the stand and forced her to "take the Fifth" would have been professional misconduct by defense counsel and probably prohibited by Judge Rose.

**Ground Two:  Failure to Challenge Misidentification**

Roberts asserts that during trial several witnesses misidentified him.  However he never says which witnesses he is talking about or what more counsel could have done to successfully challenge their misidentification.  He mentions one witness who said she was sure she had seen him in her yard.  But Roberts notes that it was proven by the FBI and other witnesses that he was in Nashville at the time.  But the fact that a witness who claims to have seen something with her own eyes is contradicted by other witnesses cannot keep her from testifying to what she believes she saw.  The question of what witnesses to believe is for the jury to decide.  The Magistrate Judge is not sure whether her testimony was decisive in the jury's eyes, but there could hardly be a better way to rebut it than to present FBI testimony which contradicts it as was done here by Roberts' own admission.

Defense counsel did challenge pre-trial identification by appropriate means, to wit, a motion *in limine* (ECF No. 311).

In sum, Defendant has not identified what else defense counsel could have done to challenge identification or why failure to do it was deficient performance by trial counsel.

**Grounds Three through Six**

The Government's Response pleads complete defenses to Grounds Three through Six. In his Reply, Roberts offers no response to those defenses. This leads the Court to treat them as abandoned or at least entitled only to summary consideration.

In Ground Three Petitioner asserts that FBI agents

> engaged in misconduct by improperly influencing witnesses. Several witnesses were provided with monetary compensation. One of these witnesses was the daughter of two law enforcement officers. She was relieved of pending charges against her, was coached and made witness through the FBI coordinating with her parents and was coached to support the government's theory of the case.

(Motion to Vacate, ECF No. 468, PageID 671). Roberts provides no evidentiary support for any of the factual claims made in this Ground for Relief. Nor does he offer any excusing cause and prejudice to overcome his procedural default for not presenting this claim on direct appeal[4].

---

[4] At several points in his Motion, Roberts adverts to the preference of the Sixth Circuit to have ineffective assistance of trial counsel and ineffective assistance of appellate counsel claims presented by way of a § 2255 motion, rather than on direct appeal. The Magistrate Judge understands that to be the case. *Griffin v. United States*, 330 F.3d 733, 737 (6th Cir. 2006). Procedural default doctrine does not bar the 2255 motion even if the issue could have been raised on direct appeal. *Massaro v. United States*, 538 U.S. 500 (2003); *United States v. Neuhausser*, 241 F.3d 460 (6th Cir. 2001); *United States v. Fortson,* 194 F.3d 730, 736 (6th Cir. 1999). But that preference does not apply to others claims which can be adjudicated on the appellate record.

Roberts' Ground Four appears to be a complaint against use of leading questions by the prosecution. He offers no record references to any place in the lengthy transcript where this occurred, although the Order for Answer in this case expressly provides: "The Court's CM/ECF filing system affixes a unique PageID number to each page of the record, displayed in the upper right-hand corner of the page. All papers filed in the case hereafter by either party shall include record references to the PageID number." (ECF No. 463, PageID 5863). To the extent Roberts believes it was error for the trial court to allow leading questions, he provides no excuse for failing to raise this claim on direct appeal. Finally, even if it was error to allow the leading questions, Roberts has cited no Supreme Court authority holding it to be a violation of the Constitution for the trial court to allow such questions or finding using such questions to be prosecutorial misconduct that is unconstitutional.

In Ground Six Roberts accuses Attorney Lori Withers Cicero of unethical conduct in testifying against him because she had represented him in a prior case. Whether or not she would be allowed to testify was litigated before Judge Rose who decided she could testify (ECF No. 360). That was claimed to be error on appeal and the Sixth Circuit decided to the contrary. Relitigation of that issue in a § 2255 proceeding is precluded by *res judicata.*

**Conclusion**

The Magistrate Judge respectfully recommends that the Motion to Vacate be denied with prejudice. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Defendant be denied a certificate of appealability and that the Court certify to

the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to

proceed *in forma pauperis*.

November 3, 2025.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6, but service is complete when the document is mailed, not when it is received. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal.